**SPEAKS et al. v. SPEAKS.**

No. 11392—Opinion Filed June 19, 1923.

Rehearing Denied Feb. 19, 1924.

Corrected and Refiled March 11, 1924.

**1. Appeal and Error—Findings in Equity Case—Conclusiveness.**

In an equitable action the findings of the trial court should be sustained unless it appears that his findings are clearly against the weight of the evidence.

The findings of the trial court should be strongly persuasive, and should not be set aside unless this court can say, in equity and good conscience, that the conclusion reached by the trial court is clearly against the weight of the evidence.

**2. Wills — Validity of Execution.**

A testator while ill requested his son to secure the services of a scrivener or stenographer, to come to his residence for the purpose of preparing his will, and thereafter the parties appeared at the residence of testator, and after a discussion of what the will should contain, and of what disposition should be made of the testator's property, with the wife of the testator, and in the presence of the testator, at his bedside, the stenographer thereafter reduced to writing and prepared the will in conformity with his understanding of the testator's desire, and after the same was written, read same over to the testator and inquired of him if that was all right, whereupon the testator gave his assent to same; and thereafter, witnesses, who had been present during all of the negotiations, witnessed the conversation, the preparation of the will, and the assent of the testator, affixed their signatures, although not expressly requested to do so. And it further appearing that said will was in conformity to former declarations made by the testator, shortly prior to the execution thereof, held, that it was the obvious intention of the testator to execute his will as it was executed; that such execution was sufficient, it not being necessary that he should by express language declare the document to be his will, or to so expressly request the witnesses to sign it as such. But any exclamation, declaration, or gesture made in response to inquiry as to his intention and desire, which clearly conveyed his thoughts and intentions and about which reasonable minds would not differ, would be a sufficient mode or manner of expressing his intention and desire.

(Syllabus by Jones, C.)

Commissioners' Opinion Division No. 3.

Error from District Court, Johnston County; J. H. Linebaugh, Judge.

In the matter of probate of will of J. T. Speaks. From judgment for proponent, Ida Speaks, contestants, John F. Speaks et al., bring error. Affirmed.

Cornelius Hardy, J. F. McKeel, and Robt. S. Kerr, for plaintiffs in error.

Ratliff & Ratliff, for defendant in error.

Opinion by JONES, C. This is a case on appeal from the district court of Johnston county, and the plaintiffs' petition alleges that on December 31, 1917, J. T. Speaks

made and executed his last will and testament, giving all of his property to his wife, Ida Speaks, and their minor children, except $5 each to his other children. That on the 23rd day of March, 1918, the said J. T. Speaks departed this life. That on April 18, 1918, Mrs. Ida Speaks, the surviving widow of J. T. Speaks, filed her petition in the county court of Johnston county, for the probate of said will. The court set said petition for hearing on the 27th day of April, 1918, and on April 27, 1918, the contestants herein filed their protest, objecting to the probate of the will, alleging:

"First, that the said J. T. Speaks was incompetent to make a last will and testament;

"Second, that at the time of the making of said will the said J. T. Speaks was under undue influence, menace and duress;

"Third, that said will was not executed as required by law, and is void."

Said matter was heard in the county court on November 1, 1918, and judgment rendered refusing to admit said will to probate by the county judge of Johnston county, from which order and judgment of the court the proponent appealed said case to the district court of Johnston county. And on November 21, 1919, said case came on for trial before the Honorable J. H. Linebaugh, district judge. And after the submission of the evidence in the case, the district court found in favor of the proponent, reversed, vacated, and set aside the judgment of the county court, and remanded same to said court with instructions to admit said will to probate. From which order and judgment of the district court the plaintiffs in error appeal.

The evidence in this case discloses that J. T. Speaks, testator, was twice married, and that there were born of his first marriage six children, who are now living, and that subsequent to the death of his first wife, he married his present wife, of which union seven children were born, all of whom are now living. The evidence also discloses that he had acquired some property during the life of his first wife, and that through industry and frugality it had continued to increase until he had accumulated considerable property at the time of his death, and the major portion of said property was accumulated during his second marriage.

Mr. Speaks, the testator, was in bad health for more than a year prior to his death, and was confined to his bed a greater portion of his time during the month of December, and was at the time he executed the will in question.

On December 31, 1918, his son, S. D. Speaks, at the request of his father, went to Milburn and there secured or induced Mr. Dodd and Mr. Pate to go to his father's house for the purpose of preparing the will. The evidence as to who induced young Speaks to go on this errand is conflicting: he, however, states that his father requested him to go to Milburn for the purpose of getting Mr. Hunnicutt, a friend of the testator, to come to his place for the purpose of preparing the will for his signature and execution. Mr. Hunnicutt, at the time, was busy in the discharge of his duties about the bank and suggested to young Speaks that he secure Mr. Dodd and Mr. Pate to attend to the matter for him, which he did. Dodd and Pate went to the residence of the testator, Speaks, and after some considerable conversation with Mrs. Speaks, and in the presence of testator and the attending witnesses, Mr. Dodd prepared the instrument on his typewriter, which he had carried with him; and after the same was prepared, read the same to the testator in the presence of the attending witnesses, and inquired of him if that was "all right," to which question the testator gave his assent by nodding his head and responding "uh huh" (the evidence discloses that testator was suffering with a throat trouble and that it was difficult for him to speak), and immediately thereafter subscribed said will by making his mark, and same was attested by Mr. Dodd, Mr. Pate, and Mrs. Hankins, there in the room and in the presence of the testator, Mr. Speaks.

No express declaration was made by Mr. Speaks, the testator, requesting the witnesses to attest same, but the necessity of having attesting witnesses was discussed in his presence and hearing, and the witnesses were present at the time he acknowledged said instrument to be his last will and testament and gave his assent to the same.

The petition in error sets forth numerous assignments of error, but the real issues in this case, as presented by the evidence and the briefs submitted, are as follows:

(1) Whether or not the testator, J. T. Speaks, was possessed of sufficient mental capacity to execute his will at the time of the execution of the same; and, (2) whether or not said will was executed according to the provisions of our statutes.

The evidence on the first proposition raised, as to the capability of the testator, is conflicting to some extent. It is evident

that the testator was very weak and greatly debilitated at the time of the execution of the will, and in such physical and mental condition as would cause reasonable men to differ as to his mental capacity to execute the will, but the testimony of the witnesses discloses that all of the witnesses who were present at the time of the execution of the will were of the opinion that the testator was in full possession of all of his faculties, knew and understood the contents of the will, and that same was in conformity to his wishes and desire.

Counsel for plaintiffs in error very ably present the contention of the contestants in brief herein filed, and urge, with some merit, their contention, and call special attention to the testimony of Mr. Dickey, who was called to see the testator, Speaks, in consultation with Dr. Clark, in the afternoon of the same day, and a few hours after the testator had executed his will. The writer of this opinion is personally acquainted with Dr. Dickey and naturally inclined to hold in very high regard his evidence pertaining to the mental condition of the testator, and while he pronounced the testator as being non compos mentis at the time he examined him some few hours after the execution of the will, he would not say that he might not have been rational and capable of executing the will at the time he did execute it.

Dr. Clark, who was the attending physician of the testator during his last illness, and had visited him frequently, just prior to the execution of the will, and continued his visitations subsequent thereto, called on the testator in the morning of the same day on which he executed his will, and was present with Doctor Dickey at the time of Dr. Dickey's examination, in the afternoon. In answer to a question as to the condition and capability of the testator to make his will at the time of the execution of same, he answered, "that in the morning he talked very rational, and talked very rational in the afternoon; I suppose from his appearance at the time he was able to make a will." He further testified that the testator lived more than two months after the execution of his will, and was in fairly good condition mentally for sometime after the execution of the will. That his mind grew weaker and finally became affected, but that his mind was all right up until a short time prior to his death.

And while the evidence is conflicting on this point, as to his mental capacity, we think the preponderance of the evidence is in favor of the testator's mental capacity being sufficient to enable him to intelligently execute this will at the time. In former decisions of this court, it has uniformly been held that where the evidence is conflicting, the verdict of the jury will not be disturbed, if there is any evidence reasonably tending to support the same (Stewart v. Riddle, 76 Okla. 70, 184 Pac. 443); and we find various other authorities setting forth the same doctrine, and likewise it is a well-settled rule where matters of fact are submitted to a judge or the court, rather than a jury, that the finding of fact by the court will be given the same force and effect as if returned by a jury.

The second question raised is whether or not the will was executed in conformity with the requirements of the law. And as said by defendant in error in brief filed herein, the provision of our statute was not strictly complied with, and the condition of the testator, in all probability deterred those who were assisting him in the preparation and execution of same from fulfilling all of the requirements as fully and as particularly as might have been, but the real question to determine is whether or not the instrument presented for probate expresses the will of the testator, and whether or not he gave his assent and subscribed same of his own free will and accord, and with a proper understanding of the contents thereof. And we find from an examination of the authorities that mere irregularity or failure to use the exact language specified in the statute is not sufficient to justify the setting aside of a will.

In the case of In re Silva's Estate, from California, reported in 145 Pac. 1015, the court lays down the following rule in matters of this character:

"A testator while ill told one of the witnesses that he desired to make a will and the witness drew it and presented it to the testator for his signature. The testator signed, and thereafter the witnesses affixed their signatures, although they were not specially requested to do so.

"Held, that as it was the obvious intention of the testator to execute his will, the execution was sufficient: it not being necessary that he should expressly declare the document to be his will, or expressly request the witnesses to sign it as such."

And we think the evidence in this case is ample to support the rule as above laid down and clearly brings the case within the rule.

We are not dependent entirely upon the evidence of the witnesses present at the time of the execution of the will, in deter-

mining the will of the testator, and whether or not the instrument subscribed is, in fact, the will of the testator, for in this case some evidence is offered, which is undisputed, of previous statements made by the testator to his friend and banker, Mr. Hunnicutt. and to his son, S. D. Speaks, to the effect that he desired to make a will, and that he wished to give his property to his wife, and minor children. This rule is well stated in the case of In re Hayes Estate, from the state of California, 135 Pac. 44, wherein the court said:

"That a will such as might have naturally been expected from a testatrix so situated, and consistent with her affections and previous declarations, was strong evidence of testamentary capacity."

In this case we find the will to be fairly well in keeping with what might naturally be expected, and previous declarations made by the testator, and in keeping with the natural affection of a father and husband for his wife and minor children, evincing a desire to aid and provide for those who had been with him in his declining years, and those members of his family who, by reason of their situation and age, would be mostly in need of such aid and assistance.

Plaintiffs in error, contestants below, cite as an authority in this case, the case of McCarty et al. v. Weatherly et al., 85 Okla. 123, 204 Pac. 632, an opinion rendered by this court, but we think the case at bar is distinguishable from the case cited, in that in the McCarty-Weatherly Case, the question of fraud and undue influence on part of the defendants in error in procuring the will to be made by the testator, seems to have been the predominating issue. The testatrix in that case was an illiterate, blind Indian woman, and the instrument executed by her was not in keeping with what would naturally be expected. and was executed under circumstances and surroundings entirely different from the circumstances surrounding the case at bar.

It is true, the court lays down the rule in the fourth paragraph of the syllabus to the effect that the testator must, at the time of subscribing or acknowledging the same, declare to the attesting witnesses that the instrument is his last will and testament, in conformity with the third paragraph of section 8348, Rev. Laws 1910, being section 11231 of Comp. Stats. 1921, but this does not necessitate a formal request of any particular nature, and as said by the court in Re Johnson's Estate (Cal.) 93 Pac. 1015, it is sufficient if the testatrix by words or conduct conveys to witnesses the information that the instrument was her will. and that she desired their attestation. And in Re Mullin's Estate, 110 Cal. 252, 42 Pac. 645, the court held, that when, in response to statements of attorney that "You can make your cross and I can sign for you, if you so direct," the testator stated, "Very well: do so," signature is sufficient; and further, that where testator, in response to question of attorney, "What is this instrument?" replied "That is my will," he having just signed it, it is a sufficient publication.

Under the facts, as we view them, in this case, and the rules of law, which are clearly enunciated by the authorities heretofore cited, we find no reason why the judgment of the lower court should be disturbed. The judgment is therefore affirmed.

By the Court: It is so ordered.