This is an action to contest the will of Joseph P. Adam, deceased, commenced in the county court of Kay county, by petition of Pierre J. Adam and another to set aside an order theretofore made admitting the will to probate. The cause was tried in the county court, resulting in the judgment denying the petition to set aside the will. Appeal was had to the district *Page 91 
court, where trial de novo was had, where the judgment and order of the county court was upheld. Pierre J. Adam appeals.
The sole ground for contest is that the formalities in the execution and publication of the will required by section 11231, C. O. S. 1921, were not observed; that is, the will being in writing and subscribed at the end thereof by the testator himself first, the subscription by the testator was not made in the presence of the attesting witnesses, nor acknowledged by him to have been signed by him or by his authority; second, the testator did not at any time declare to the attesting witnesses that the instrument was his will, and third, the witnesses did not sign the will in the presence of each other or at the testator's request.
The attesting clause and the signatures appearing thereto are as follows:
"Subscribed by Joseph Adam in the presence of each of us, the undersigned, and at the same time declared by him to us to be his last will and testament, and we thereupon, at the request of Joseph Adam, in his Presence and in the presence of each other, signed our names hereto as witnesses this 15th day of April, 1921.
"Harry Rein "Address: Ponca City, Oklahoma.
"Rolla Zerger "Address: Ponca City, Oklahoma.
"George A. Hoyo, "Address: Ponca City, Oklahoma."
The fourth of the formal requisites of section 11231, supra, is as follows:
"There must be two attesting witnesses, each of whom must sign his name as a witness at the end of the will at the testator's request and in his presence."
As to the number of witnesses, it will be observed there was one more on the face of the paper than the law requires.
The Point first relied upon by contestant, namely, that the will was not signed by the testator in the presence of the witnesses, cannot be sustained. One of the purported witnesses, Rolla Zerger, positively denied that he signed the will or that he was present when the testator signed. Another witness, Henry Rein, testified that he believed the name of Joseph Adam was written on the will when he first saw it, and that he did not see Joseph Adam write his name on the will. The will, as shown, was dated April 15, 1921. The hearing was had on May 4. 1928, more than seven years after the will was dated. The witness was uncertain about many of the incidents connected with the signing of the will and his memory was not clear as to just what occurred or who was present. The other subscribing witness, Mr. George A. Hoyo, testified positively that Adam signed the will in the presence of the witnesses; that he saw him sign it; that he saw the other two witnesses sign it before he himself signed it. His name appears last on the instrument. Eugene Wetzel, defendant in error, was a witness. Rein and Hoyo both testified that Wetzel was present when they signed the will. Wetzel testified positively that Joseph Adam signed the will in the presence of the subscribing witnesses. There was no positive testimony that he did not. The clear weight of the evidence on this point is in support of the findings and judgment of the trial court.
The second point is that testator did not at any time declare to the attesting witnesses that the instrument was his will. Upon this point the great weight of the evidence is to the contrary. The witness Hoyo in his testimony on this point, in testifying as to what took place at the time he signed, testified:
"Q. I am asking you about your independent recollection, "Mr. Hoyo. A. I am sure that Adam told me that it was his last will."
Rein did not remember that Joseph Adam stated in so many words that the instrument was his will, but stated:
"A. Well. I went in: Clyde Harrold was sitting at his desk by the will there and he told me to sign this, this was Joe Adam's will; I signed it, sat down and signed it, and I got up; I was on this side of the table like, and as I turned around I saw Joe Adam was standing right over there and I made some remark, I couldn't repeat it, about giving his stuff away, such as that, I couldn't repeat it, had a little talk with Joe and went out."
Clyde Harrold, who the record shows was deceased at the date of the hearing, was the attorney who had drawn the will, and in whose office the parties were when the will was signed.
Eugene Wetzel testified:
"A. I remember when Joe signed the will, I remember Mr. Henry Rein taking the place of Joseph Adam and signing with the same pen: I remember Rollo Zerger sitting down in the same place and signing with the same pen; I remember George Hoyo sitting down and signing the will with the same pen; I remember further that Henry Rein said, 'Joe, what are you making a will for? Are you ready to die already?' Joe answered, 'No, I am not quite ready.' I couldn't just state the exact words, but that was the meaning, I can't remember the exact words, but that was the meaning of it." *Page 92 
Thus it will be seen there is positive evidence that the testator declared in the presence of the attesting witnesses that the instrument was his will. In addition thereto there is positive testimony that Clyde Harrold, the attorney whom the testator employed to draw the will, stated to the subscribing witnesses, in the presence of the testator, that the instrument they were about to sign was the will of Joseph Adam, the testator. There is no direct denial of this testimony
The third point is that "the witnesses did not sign the will in the presence of each other or at the testator's request." The evidence is clear and undisputed that the witnesses Rein and Hoyo signed in the presence of each other. The evidence is that after the will had been prepared by the attorney, both Adam and the attorney requested Eugene Wetzel to "go down and get three witnesses." He stated further:
"Well, both told me to go down and get three witnesses, and so I did. Q. What do you mean they both told you? A. Joseph Adam and Clyde Harrold said they wanted to get witnesses to the will. Q. Did you go down and get some witnesses? A. Yes. Q. Who did you get? A. I got Henry Rein, Rollo Zerger, and Joseph A. Hoyo."
In this he is corroborated by the witnesses Rein and Hoyo, and contradicted by Zerger. Rein, in addition to the testimony quoted above, said:
"Q. And Mr. Harrold, you understood to be his attorney in the preparation of the will? A. Yes, and he showed me where to sign it. Q. And Adam was either standing up or sitting right there next to Clyde Harrold? A. Right close around there. Q. And was right there when Clyde pointed at the line he wanted you to sign on? A. He was right close to me. Q. Mr. Adam? A. Yes."
In Speaks v. Speaks, 98 Okla. 57, 224 P. 533, it was held:
"That such execution was sufficient, it not being necessary that he should by express language declare the document to be his will, or to so expressly request the witnesses to sign it as such. * * *"
Here the evidence does not show an express request in so many words to the subscribing witnesses that they sign the will as such witnesses, but it does show an express request of the testator that the witnesses be brought to the office of the attorney for that purpose, and the record further shows an express request in so many words by the attorney, Mr. Harrold, in the presence of the testator.
As stated in Speaks et al. v. Speaks, supra, the law does not require that the testator, in words directed to the witnesses, request that they sign the will as witnesses. It is enough, if from all the facts and circumstances of the execution of the will, it appears that the witnesses signed at the request of the testator.
In Re Silva's Estate (Cal.) 145 P. 1015, it was said:
"It is not necessary that the testator should have spoken words declaring the document to be his will, or that he should expressly request the witnesses to sign it as such. It is sufficient if this declaration and request are unmistakably indicated to the persons signing as witnesses by the testator's conduct and actions, although there is no declaration in words to that effect. The testimony leaves no doubt that the testator signed the document as his will, that he gave all persons present to understand that it was his will, and that he desired the subscribing witnesses to attest the same for the purpose of constituting it a will. Nothing more on this point is required by the statute. There is, it is true, much confusion and conflict in the testimony of the several witnesses with regard to the occurrences at the time of the execution of the will. This is not surprising, and indeed it was to be expected, since the persons present were called upon to testify in regard to the facts six years after they occurred."
Contestant cites In re Noyes Estate (Mont.) 105 P. 1013, and other cases to the same effect as was there held, but we think the evidence in this case tending to show that the subscribing witnesses signed at the request of the testator is much stronger than in the Noyes Case. The facts in the instant case are more like those in Miller v. Bush (Mont.) 97 P. 935, where it was held:
"It is not essential that testator should expressly ask the subscribing witnesses to sign or expressly declare the instrument to be his will, and all the attending facts should be considered to determine whether Rev. Codes 1907, sec. 4726, declaring how wills shall be executed, has been complied with so as to carry out the intent with which it was adopted."
We are of the opinion that there was ample evidence to support the finding of the trial court that the will was duly executed and attested by the testator, and "witnessed as required by law." We have reached the foregoing conclusion entirely independent of the evidence concerning the subscription of the will by the witness Rolla Zerger, and the recitals of the attesting clause, which the witnesses say they did not read. We have carefully examined the record with reference to the subscription of the will by *Page 93 
the witness Zerger, and find that while he testifies positively that he did not subscribe his name to the will and the purported signature by him is not his signature, there is much convincing evidence that he did subscribe his name to the will. One other witness testifies positively that he did and that he saw him sign his name. In addition thereto, there was an eminent expert on questioned documents, Mr. J.C. Sherman, of Wichita. Kan., from whose testimony, coupled with that of the other witnesses, and the fact that some seven years had elapsed between the execution of the will and the hearing in the, trial court, it is shown to be quite probable that the memory of the witness Zerger was faulty.
We conclude that the findings and judgment of the trial court are not against the clear weight of the evidence, but in accord therewith.
The judgment is affirmed.
CLARK, V. C. J., and HEFNER, CULLISON, ANDREWS, and KORNEGAY, JJ., concur.
LESTER, C. J., and SWINDALL and McNEILL, absent, not participating.
Note. — See under (1) 28 R. C. L. p. 122; R. C. L. Continuing Perm. Supp. p. 1163.