In the Matter of the ESTATE of Simon ATOHKA, Deceased.

No. 36359.

Supreme Court of Oklahoma.

April 12, 1955.

Appeal from the District Court of Latimer County.; Clyde Followell, Judge.

In administration proceedings covering the estate of Simon Atohka, deceased, where the will's admission to probate first proposed by one of the residuary devisees, was opposed by certain claimed heirs, and

denied by the County Court, whose judgment was affirmed by the District Court on appeal and trial de novo; said proponent and her husband, the other residuary devisee, appeal. Affirmed.

B. S. Null, Hartshorne, for plaintiff in error.

Bob Perdue, Wilburton, for defendants in error.

BLACKBIRD, Justice.

This is an appeal from the judgment of the District Court affirming, upon trial de novo, an order of the County Court of Latimer County, refusing admission to probate of the will of Simon Atohka, a full blood Choctaw Indian resident of said County, who died June 26, 1951, seized, and apparently residing upon, a portion of the Indian allotment of his pre-deceased Indian wife, Melvina, estimated to be worth $2,500. Apparently the testator, whose exact age does not appear, but who was thought by some of the witnesses to be in his seventies, had no living blood relatives except four grand-nephews and grand-nieces who were the sons and daughters of Mrs. Winnie Oliver and her deceased former husband, the testator's nephew, Simon Carshall.

Mrs. Oliver, and perhaps her family, or some of it, had lived in the testator's home from sometime in 1948 until after his wife's death on March 23, 1950. Five days after the latter event, the testator, who was an habitual drunkard, and was said to have spent his old age assistance benefits for intoxicants, was declared incompetent after an investigation requested by the State Department of Public Welfare; and Mrs. Alpha Winlock, who with her husband, Ellis Winlock, had been the testator's neighbors more than thirty years, was appointed his guardian. After this occurred, Mrs. Oliver moved out of the testator's home at the request, or demand, of Mrs. Winlock, who, with her husband, then moved in, and thereafter, until his death, cared for the testator, who was in poor health, almost blind and experienced difficulty in hearing. It was to this couple that the testator's will purported to leave the residue of his estate, after payment of his debts and funeral expenses and bequests of $1 each to his "heirs at law".

After Mrs. Winlock, who in the will was named executor without bond, filed her petition for admission of the will to probate, Mrs. Oliver and her sons and daughters objected to such admission. The latter will hereinafter be referred to as "Contestants" and Mrs. Winlock and her husband as "Proponents".

At the trial in the County Court, and more especially during the trial de novo in the District Court, evidence was introduced calculated to show the will's invalidity. At the latter trial, the contestants' position was supported by evidence contemplated to show not only that the will was drawn at the instance and as a result of alleged fraud, undue influence and/or duress on the part of the proponents, but that the will, if it in fact bore testator's true signature, was also executed under such conditions and manner as to render it invalid under our statutes and previous decisions. The District Court, hereinafter referred to as the "trial court" found that the will was not validly attested in that the testator never requested the attesting witnesses to sign it, and on that specific ground, affirmed the county court without decision on the other issues of fraud, undue influence, etc.

The present appeal from said judgment requires application to the facts of this case of Tit. 84 O.S.1951 § 55, which provides in part as follows:

"Every will, * * * other than a holographic will and a noncupative will, must be executed and attested as follows:

\*   \*   \*   \*   \*   \*

"2. The subscription must be made in the presence of the attesting witnesses, or be acknowledged by the testator to them, to have been made by him or by his authority.

"3. The testator must, at the time of subscribing or acknowledging the same, declare to the attesting witnesses that the instrument is his will; and,

"4. There must be two attesting witnesses, each of whom must sign his name as a witness at the end of the will

*at the testator's request* and in his presence." (Emphasis ours.) .

▮▮▮▮ In maintaining that the trial court's judgment is contrary to law and not supported by any competent evidence, proponents direct their arguments solely to the issue of testamentary capacity and seek to invoke the presumption of such capacity that ordinarily follows proof of the will's due execution and attestation, citing Amos v. Fish, 193 Okl. 406, 144 P.2d 967. Such argument is not applicable to the only issue decided by the trial court (as above shown) and accordingly furnishes no reason or justification reversing that court's judgment. As to the question of attestation, this court, in the case of In re Jones' Estate, 190 Okl. 123, 121 P.2d 574, 575, 576, quoted from in In re Belmore's Estate, 189 Okl. 86, 113 P. 2d 817, 818, as follows:

" 'We think this evidence sufficiently establishes a compliance with the requirements of the statute above set forth. Substantial compliance is all that is required. In re Free's Estate, . 181 Okl. 564, 75 P.2d 476. *No* formal request that the witnesses sign, or express *declaration that the instrument is his will, is required.* It is sufficient if the testator by words *or conduct conveys to the witnesses the information that* the instrument is his will, and that *he desires them to witness it.* In re Adam's Estate, 149 Okl. 90, 299 P. 226; Speaks v. Speaks, 98 Okl. 57, 224 P. 533. That such was done by the testator in the instant case is established by the record.' " (Emphasis ours.)

It does not appear from the opinion in the Jones' Estate case just exactly what the testator said or did by way of requesting two of the attesting witnesses to sign her will as such, but an examination of the briefs filed therein reveals that there the primary question with reference to the execution of the will concerned the requirement prescribed by paragraph 3 of the statute, supra, namely that the testator "declare to the attesting witnesses that the instrument is his will; * * *." This Court's opinion in the case of In re Adam's Estate, 149 Okl. 90, 299 P. 226, cites In re Miller's Estate (Miller v. Bush), 37 Mont. 545, 97 P. 935, 941, dealing with a statute identical with ours, wherein it was said:

"It is not essential that the testator should expressly ask the subscribing witnesses to sign or expressly declare the instrument to be his will. All the attending facts and circumstances should be considered in order to determine whether the statute has been substantially complied with so as to carry out the intent with which it was adopted. Our conclusion in this matter is borne out by the following authorities: (Citing cases). .

\* \* \* \* \* . \*

" 'No particular form of request is necessary, and it may be implied from acts. Anything which conveys to the witnesses the idea that they are desired to be witnesses is a good request. Even a *knowing acquiescence* may be equivalent to an actual request in words. Thus the testator need not make the request himself, but it may be made by the draftsman, professional adviser, or other person present, provided the testator's *intelligent acquiescence distinctly* appears.' " (Emphasis ours.)

Even if we were to given our statute the broadest construction permissible under the above-quoted views (which this Court has never yet expressly done) and hold that the testator's "knowing" or "intelligent acquiescence" is the equivalent of a "request" under the statutes, still in view of all of the pertinent facts and circumstances in this case, there would be no valid justification for reversing the trial court's judgment. If we did so, our action would be based solely upon the fact that the testator was physically present when the witnesses signed. For, in view of the testimony concerning his blindness, deafness, addiction to alcoholic beverages, incompetency (at least for some purposes), his illness, his ignorance of the English language, and the fact that he was without the services of an interpreter, which he

generally used in matters of similar importance, we could not say, with any degree of certainty, and in contradiction of the trial court's holding, that "the testator's intelligent acquiescence distinctly appears." Both the County and District Judges were in a better position than are we to determine the weight and credibility of the pertinent evidence on this question. In accord with the rule that the trial court's judgment in such matters will not be reversed unless it can be held to be clearly against the weight of the evidence, see In re Fike's Estate, 199 Okl. 166, 184 P.2d 752, the judgment is affirmed.

JOHNSON, C. J., and CORN, DAVISON, HALLEY and JACKSON, JJ., concur.

WILLIAMS, V. C. J., dissents.