**In the Matter of the ESTATE of Lillian BURKE, Deceased.**

No. 53293.

Court of Appeals of Oklahoma, Division No. 1.

Dec. 26, 1979.

Rehearing Denied Feb. 19, 1980.

Certiorari Denied June 2, 1980.

Approved for Publication by the Supreme Court June 5, 1980.

Leon J. York, Stillwater, and Jimmie Wilcoxon, Cushing, for appellant.

Robert M. Murphy, Stillwater, for appellee.

ROMANG, Presiding Judge:

This appeal is from a "Judgment Denying Probate of Contested Will" which reads in pertinent part:

[T]he following findings of facts and conclusions of law constitute the decision of this Court:

1. That at the time of so executing the purported Will, the said Testatrix was in all respects competent to make a Will.

2. That Testatrix was not induced to sign alleged Will by means of undue influence, menace or duress.

3. That said purported Will was not executed and attested, as by law required for valid wills, and is therefore not entitled to be admitted.

4. That at the time of its execution, the said Testatrix did not make a request of the witnesses to serve as such in the execution of the will, nor did Testatrix ask the witnesses to acknowledge her signature, nor did she tell them at the time that she was signing this instrument as her Last Will and Testament.

WHEREFORE, by virtue of the law and by reason of the premises aforesaid, it is ORDERED, ADJUDGED AND DECREED that said instrument as the Last Will and Testament of Lillian Burke, Deceased, be and the same hereby is, denied probate.

The court's decision is shown in the transcript of hearing as follows:

It is the decision of the Court that the Will not be admitted to probate, as it was not properly subscribed and that there was no declaration to the subscribing witnesses or attesting witnesses that the instrument was a Will and will not be admitted.

▮ The following is a photo copy of the second page of the contested will:

to make, execute and deliver and accept any deeds, assignments, leases, releases, mortgages or other written instruments desirable or proper to carry out, consummate, and render effective any act or actions done or taken pursuant to the powers and authority herein granted.

In witness whereof, I Lillian Burke , have to this my last will and testament subscribed my name this ___3rd____ day of November, 1978.

Subscribed by Lillian Burke in the presence of each of us the undersigned, and at the same time declared by her to be her last will and testament, and we thereupon, at her request, in her presence and in the presence of each other, signed our names hereto as witnesses this ___3rd____ day of November, 1978.

Testatrix
*Lillian Burke* P. O. Address ~~~~~~~~~~~~~~~~~~~~~~~

*Mickey Berlowitz* P. O. Address *RT #2 Cushing Okla.*

*A. J. Laughlin* *Edmond, OK*

The typed words "Lillian Burke" and "Testatrix" were added to the second page after it was signed.

84 O.S.1971, § 55, as amended, provides:

Every will, other than a noncupative will, must be in writing; and every will, other than a holographic will and a noncupative will, must be executed and attested as follows:

1. It must be subscribed at the end thereof by the testator himself, or some person, in his presence and by his direction, must subscribe his name thereto.

2. The subscription must be made in the presence of the attesting witnesses, or be acknowledged by the testator to them, to have been made by him or by his authority.

3. The testator must, at the time of subscribing or acknowledging the same, declare to the attesting witnesses that the instrument is his will.

4. There must be two attesting witnesses, each of whom must sign his name as a witness at the end of the will at the testator's request and in his presence.

The first question is whether the signature of Lillian Burke is subscribed at the end of the will.

In *Coplin v. Anderson*, Okl., 281 P.2d 186, the court syllabus states:

Where testator failed to sign will on line provided at end for his signature, but signed in the attestation clause, instrument was not invalid under statute requiring signature at end, where from the evidence and the four corners of the instrument it was conclusive that signature was affixed with testamentary intent.

And in the *Coplin* opinion the court said:

In accord with the view entertained by most courts that the end of a will is the

end of the testamentary dispositions there set forth, our Legislature in enacting Section 55, supra, did not intend nor purport to specify the exact line or place at such end where the signature had to appear to be competent and sufficient as a subscription; and when the testator's signature appears at such end, then the statutory requirement as to its location on the document is met. . . . Here the testator not only subscribed his name at what he apparently thought was "the end" of the will, but in fact subscribed it at the end of his testamentary dispositions, which, as we have seen, is the equivalent of the "end of the will" within the logical and reasonable rule above referred to, and within the meaning we think was intended by our Legislature.

■ Under the above law, we conclude that Lillian Burke subscribed her name at the end of the will, which brings us to the second question of whether she subscribed it with testamentary intent.

Early on the date of November 3, 1978, Lillian Burke telephoned her cousin, Jack Laughlin, and asked him to have a will drawn up for her to provide as she instructed him on the telephone. Pursuant thereto, Jack Laughlin had his attorney to draw the subject will for Lillian Burke, and Jack Laughlin took the will to where he met Lillian Burke at about 1:00 o'clock that date in Cushing, Oklahoma. The reading and signing took place in and at the pickup truck of Jack Laughlin. In this regard, the transcript of hearing reflects the following:

COURT: I'm still not clear. No one else wants to ask the questions so I will. Let me get this full picture. You were in your pickup, I assume?

A Yes, sir.

COURT: And Mrs. Burke was in the pickup with you?

A Yes, sir.

COURT: All right. And you didn't sign it at the lawyers office?

A No, sir.

COURT: All right, So you came down to the pickup and you went over—When did you go over the will with her, before the witnesses got there or after?

A While the witnesses were there, sir.

COURT: Now, we have got Mickey Berlowitz and A. J. Laughlin. Who is A. J. Laughlin?

A That is my son.

COURT: All right. Now, and then the Notary was Phyllis Berlowitz?

A Yes, sir.

COURT: All right. So we got the pickup here and we have got Mickey Berlowitz and A. J. Laughlin standing beside the drivers side?

A Yes, sir.

COURT: Where was the Notary?

A The Notary was standing there by them, sir.

COURT: She was standing there with them?

A Yes, sir.

COURT: All right. What did you say to Mrs. Burke and what did she say to you and the witnesses?

A All right. She got in the pickup, I helped her in and she said, "Did you get the will drawn up?" And I said, "Yes." And she said, "Do you have it?" And I said, "Yes." And she said, "Did you put in it what I asked you to?" And I said, "Well, as far as I know." I said, "I'll read it to you." I said, "Do you want to read it." And she said, "No, you read it to me." So I started out reading it to her. I got down where it said a nephew instead of a cousin and she stopped me. She said, "You mean you didn't know that we are cousins?" And I said, "Yes, I knew it." But, I said, "I don't know why they typed it like that." We finished reading it and I asked her, "If there were any more questions." And she said, "That she did—It was put in there to take care of Cleo." And I said, "Yes." And I said, "I'll reread it to you again." And I did. I handed it to her to sign.

COURT: Now, where were the witnesses all of this time?

A Standing right there by the drivers side.

COURT: And who had gotten the witnesses?

A  I had.

COURT: And you had lined up the witnesses?

A  Yes, sir.

COURT: All right. And you handed her the will to be signed?

A  Yes, sir.

COURT: And she signed it?

A  Yes, sir.

COURT: And then who did she hand it to or did you hand it to?

A  She handed it back to me and I handed it to the witnesses.

COURT: Which witness did you hand it to?

A  I handed it to A. J. Laughlin.

COURT: Okay. And then did the Notary take it?

A  After the two signed it.

We conclude from the evidence and the four corners of the will, that Lillian Burke signed it with testamentary intent.

The remaining question is whether there was sufficient compliance with paragraphs 2, 3 and 4 of Section 55, *supra.*

■  While Jack Laughlin and Lillian Burke were seated in the pickup truck, with Jack on the left, the left window was down and the witnesses and notary public whose names appear thereon, were standing by said left open window. Jack had asked the witnesses and notary public to come there for the occasion. Within the hearing of all, Jack read the will to Lillian, and at her request, he read the will to her a second time. Thereupon, Lillian Burke affixed her signature to the will in the pickup truck. Jack then handed the will to A. J. Laughlin, who together with the other witness, affixed their signature thereto while the will lay on the hood of the pickup within the vision of Lillian Burke. Although Lillian Burke said nothing to the witnesses about witnessing her signature, they knew why they were there and what they were doing by virtue of what Jack Laughlin had said to them and by virtue of the conversation to which they had listened between Jack Laughlin and Lillian Burke about the will.

In *In re Atohka's Estate*, Okl., 282 P.2d 737, the opinion reads:

*No* formal request that the witnesses sign, or express *declaration that the instrument is his will, is required.* It is sufficient if the testator by words *or conduct conveys to the witnesses the information that* the instrument is his will, and that *he desires them to witness it.*

*       *       *       *       *       *

This Court's opinion in the case of *In re Adam's Estate*, 149 Okl. 90, 299 P. 226, cites *In re Miller's Estate (Miller v. Bush)*, 37 Mont. 545, 97 P. 935, 941, dealing with a statute identical with ours, wherein it was said:

No particular form of request is necessary, and it may be implied from acts. Anything which conveys to the witnesses the idea that they are desired to be witnesses is a good request. Even a *knowing acquiescence* may be equivalent to an actual request in words. Thus, the testator need not make the request himself, but it may be made by the draftsman, professional adviser, or other person present, provided the testator's *intelligent acquiescence distinctly* appears. (Emphasis ours.)

In *In re Silva's Estate*, Calif., 145 P. 1015, the Court held:

It is not necessary that the testator should have spoken words declaring the document to be his will, or that he should expressly request the witnesses to sign it as such. It is sufficient if this declaration and request are unmistakably indicated to the persons signing as witnesses by the testator's conduct and actions although there is no declaration in words to that effect. The testimony leaves no doubt that the testator signed the document as his will, that he gave all persons present to understand that it was his will, and that he desired the subscribing witnesses to attest the same for the purpose of constituting it a will. Nothing more on this point is required by the statute.

We find the above language to be particularly appropriate to the facts in the instant case.

In *Speaks v. Speaks*, 98 Okl. 57, 224 P. 533, 536, the Court held:

It is sufficient if the testatrix by words or conduct convey to witnesses the information that the instrument was her will, and that she desired their attestation.

From the undisputed facts herein and the law applicable thereto, we conclude that the decision of the trial court denying admission to probate of the subject will, is clearly against the weight of the evidence and is contrary to law. Therefore, said decision is reversed and this case is remanded with direction to admit said will to probate.

REVERSED AND REMANDED WITH DIRECTION.

REYNOLDS and BOX, JJ., concur.