[L. A. No. 2052.   Department One.—January 31, 1908.]

In the Matter of the Estate of SARAH JOHNSON, Deceased. DELLA SHERBOURNE, Contestant of Will, Appellant, v. C. H. NOLL, Proponent, Respondent.

WILLS—CONTEST—DESTRUCTION OF WILL BY CONTESTANT—SUPPORT OF FINDINGS FOR PROPONENT—CONFLICTING EVIDENCE.—Where the proponent of a will alleged its due execution, and that it was willfully destroyed by the contestant, findings for proponent, upon conflicting evidence, in regard to the execution of the will, the testamentary capacity of the deceased at the time, and the contents of the document found to have been executed as a will, will not be disturbed upon appeal.

ID.—EXPRESS DECLARATION AND REQUEST TO SUBSCRIBING WITNESSES NOT ESSENTIAL.—An express declaration at the time of the execution of the will by the testatrix to the subscribing witnesses that the document executed was her last will, or an express request to them to attest is not essential. It is sufficient, if at the time she did by words or acts convey to them the information that the instrument was her will, and that she desired them to attest it.

ID.—ATTESTATION CLAUSE—SUFFICIENCY OF EVIDENCE.—Where the witnesses signed the usual attestation clause, and there is sufficient evidence that the will was drawn for the testatrix by her attorney, and executed in his office, and that she stated to the attorney that she wished him to call witnesses to her will, and that the two persons who were then in the room were asked by him in her presence to witness its execution, which they did under the proper clause drawn by the attorney, the evidence is sufficient to justify the court in finding the due execution of the will, and the fact that some of the witnesses to the transaction could not recollect what occurred, is not sufficient to overthrow the finding as to its due execution, based upon the circumstances and other testimony given sufficient to prove it.

ID.—EVIDENCE OF EXISTENCE OF WILL AT DEATH.—Testimony of the attorney that the will was in existence two days previous to the testatrix's death, that it was then produced to her and examined by him, and that it then bore the signatures, and that she then declared it was just as she wanted it, that it was then put back in the trunk and locked up in the room where she lay sick, and that a nurse was constantly in attendance upon her and would know of any destruction of the will, if it occurred before she died, and that she had no knowledge of such occurrence, is sufficient to justify the court in concluding that the will was not revoked or destroyed before death, and that testimony that it bore no signatures after her death, was false.

ID.—SURPRISE AT TESTIMONY FOR PROPONENT—EXPLANATION BY ATTORNEY.—Where the attorney called a witness to prove the destruction of the will by contestant after the death of the testatrix, and she gave negative and evasive testimony that she did not remember seeing the signatures after the death of the testatrix, though she had a glance at the inside of the will, where it appears to have been destroyed, the rule against contradictory evidence to disprove negative testimony by the party calling a witness does not apply, and the attorney was properly permitted to prove that the witness told him that she had read the will and that it was signed by the testatrix and two witnesses, and that it cut off the contestant with a dollar, and as to its other contents, and that contestant burned it.

ID.—ABSENCE OF OBJECTION BY ATTORNEY FOR CONTESTANT.—Where the attorney for contestant acquiesced in the proposal of the attorney to explain his surprise at the evidence of the witness, he cannot complain upon appeal that the explanation was inadmissible.

ID.—SOUNDNESS OF MIND OF TESTATRIX—PRESUMPTION—PROOF—NONSUIT.—The proponent of the will, who introduced his preliminary proof as required by statute, may rely upon the presumption that the testatrix was of sound mind at the time of the execution of the will; and such presumption is evidence in his favor, and where there was further evidence for proponent that the testatrix was then acting in a rational manner, a *prima facie* case was made, which justified the denial of a motion for a nonsuit by contestant.

ID.—EVIDENCE OF DESTRUCTION OF WILL.—Where the evidence was sufficient to prove the existence of the will after death, duly executed and locked in a trunk, the court had the right to believe the testimony for contestant that it was found destroyed in the trunk after her death, and have refused to believe their statements that when it was first found by them it bore no signatures, especially where contestant stated once in her evidence, "I just looked at the signatures."

APPEAL from an order of the Superior Court of Los Angeles County admitting a will to probate, and from an order refusing a new trial to the contestant of the will. G. A. Gibbs, Judge.

The facts are stated in the opinion of the court.

C. W. Davison, J. R. Wilder, and L. L. Miller, for Appellant.

T. M. Stewart, and Haas, Garrett & Dunnigan, for Respondent.

SHAW, J.—The contestant appeals from an order of the superior court admitting a will to probate, and from an order refusing her motion for a new trial.

Sarah Johnson died on May 19, 1905. The petition for probate of her will alleged that the will was in writing, was signed by her in her lifetime, and was duly attested by two subscribing witnesses, and that after her death it was willfully destroyed by Della Sherbourne, the contestant. The written grounds of opposition filed by the contestant denied that the alleged will had been signed by the deceased, or had been by her declared to be her will in the presence of the witnesses, or at all, or that it had been signed by any witnesses, or that the deceased, at the time of the alleged execution thereof, was of sound and disposing mind and memory. The contest was tried before the court without a jury and the findings of the court were in favor of the proponent upon all the grounds of opposition.

It is earnestly contended that the evidence is insufficient to support the findings in regard to the execution of the will, the testamentary capacity of the deceased at the time, and the contents of the document found to have been executed as the will. It is sufficient to say with regard to these facts in dispute that the case comes within the rule that this court cannot decide contrary to the findings of the court below where there is conflicting evidence and there is substantial evidence tending to prove the facts found, and the additional rule that the trial court is the exclusive judge of the credibility of the witnesses testifying before it. There was no very satisfactory evidence that at the time of its execution the deceased made an express declaration to the subscribing witnesses that the document executed was her will, or expressly requested them to attest it. But an express declaration and request are not absolutely necessary. It is sufficient if, at the time, she did, by words or conduct, convey to them the information that the instrument was her will, and that she desired them to attest it as witnesses. There was evidence to the effect that the will was drawn at her request by her attorney, that it was executed in his office and under the direction of his partner, who was also an attorney accustomed to such matters and familiar with the requirements of the law regarding such execution; that she said to him that she wanted him to call

witnesses to this will of hers, that the two persons who signed as witnesses were then in the room, that he thereupon asked them to witness the execution of the document, and that immediately she and they signed the document in the presence of each other, she as testatrix and they as attesting witnesses, there being written after her signature and above theirs the usual attestation clause reciting the facts that they signed at her request and in her presence and that she declared that it was her last will in their presence. This was sufficient to justify the court in finding a due execution of the will. The fact that some of the witnesses to the transaction could not recollect what occurred is not sufficient to require us to overthrow the findings, where there are enough circumstances and testimony, aside from theirs, to justify the inference that the will was properly executed, as is the case here. (*In re Tyler's Estate,* 121 Cal. 409, [53 Pac. 928] ; *Rugg* v. *Rugg,* 83 N. Y. 592; *Patton* v. *Hope,* 37 N. J. E. 527; *Cilley* v. *Cilley,* 34 Me. 164; *Barnes* v. *Barnes,* 66 Me. 286; *Allison* v. *Allison,* 46 Ill. 61, [92 Am. Dec. 237].)

It is claimed that there is no evidence that the will was in existence after the death of the deceased. It may be conceded that the evidence that there were signatures to the document found in her trunk after her death and claimed to be the will, is not very strong. But we cannot say that it was insufficient. It was shown that the contents of the will were first dictated to a stenographer, who took down the dictation in shorthand, and that but one longhand draft was made thereof by the stenographer, and that this draft was typewritten. From this the inference follows that this draft was the identical paper which was signed by the testatrix and the witnesses. It was also shown by the contestant's testimony, and also by another witness, that after the death of the testatrix a typewritten document was found in her trunk, which was in all respects identical with the typewritten draft of the will made by the stenographer before its execution, but the contestant testified that it had no signatures appended, and the other witness claimed that she could not remember that it did. Their testimony on this point was somewhat hesitating, and, indeed, the contestant in one of her answers when testifying said, "I just looked at the signatures." There was

other testimony that the will was in the possession of the testatrix two days before her death, and was then produced by her and examined by one of her attorneys, who saw the signatures appended, that the testatrix declared that it was just as she wanted it, that it was then put back in her trunk and locked up, that between that time and her death she was unable to leave her room, and that a nurse was constantly in attendance upon her, who would have known if any such transaction as the destruction of the will had taken place, and that she had no knowledge of any such occurrence. From these facts the court might properly have concluded that the will was not revoked or destroyed prior to her death, and that the testimony that the typewritten document bore no signatures was false.

Mrs. Beard was called by the proponents and interrogated concerning the destruction of the will by the contestant after the death of the testator. It was she who, in connection with the contestant, testified to the finding of an unsigned copy of the will in the testatrix's trunk after her death. Her testimony as to the absence of signatures was very evasive and generally negative, as, for example, that she did not remember seeing any signatures. She testified that she had a glance at the inside of the will. In further examination the following occurred:—

"Q. You didn't see any handwriting or pen writing on the paper at all?

"A. No, sir, I don't remember of any."

This testimony by a friend of the only heir, as to what she saw on the occasion of the finding of a paper, in the form of a will, in the testatrix's effects, was some evidence tending to show that the paper was not signed. Her testimony indicated that she could have seen the signatures if there had been any, and, so far as it went, it was unfavorable to the proponents on the point. Over the objection of the contestant and solely for the purpose of explaining to the court the reason for calling her as their witness, the proponent, after laying the proper foundation therefor, was permitted to prove that prior to the trial she had told proponent's attorney that on the occasion in question she had read the will, that it gave Della Sherbourne only one dollar and gave the balance to the

testatrix's brother and sisters, and made Mr. Hester her executor, and that it was signed by Mrs. Johnson and two witnesses. It is conceded that where a witness is called to testify for a party as to a fact and gives only negative testimony, as that he has no knowledge on the subject, or no recollection as to the existence or non-existence of the fact, and his testimony cannot he said to be injurious to the party calling him, such party cannot be allowed to introduce evidence by way of impeachment to show that he made statements out of court to the party or his attorney inconsistent with his testimony and showing knowledge and recollection of the fact. (*People* v. *Creeks,* 141 Cal. 529, [75 Pac. 101] ; *In re Kennedy,* 104 Cal. 429, [38 Pac. 93].)

In case of a lost will, proof of its existence at the death of the testator must be made by the proponent. (Code Civ. Proc., sec. 1339.)   This witness and the contestant, so far as the proponent knew, were the only persons who had seen the will after the testatrix's death. The proponent was practically compelled to produce the witness.   The impeaching evidence was offered and was received by the court for the sole purpose of explaining the action of proponent's attorneys in calling the witness, and that they were surprised by her testimony. This was clearly stated at the close of the impeaching testimony, and was apparently understood and consented to by the contestant, for her attorney then responded, "Yes sir, I understand that Mr. Stewart wants the testimony explained as far as that is concerned. That is all right." Under these circumstances the rule that when a witness called by a party has no knowledge or recollection of the fact inquired of and gives substantially no adverse testimony on the subject, explanatory testimony is inadmissible, is not strictly applicable. The testimony was evidently considered by the court and counsel as adverse and injurious to the proponent. We also think the contestant consented to the explanation, and cannot now complain, even if it were conceded to be inadmissible. The trial was had without a jury, and doubtless counsel were satisfied that the court could disregard the testimony so far as it tended to prove that there were no signatures.

When a proponent of a will, upon the trial, opens the proceedings by preliminary proof as required by the statute, he

may rely on the presumption that the testator was of sound mind at the time of the execution of the will. Such presumption is evidence in his favor. The circumstances attending such execution and the conduct of the testator at the time may also be considered on that point. In the present case the sanity of the testatrix was sufficiently established by this presumption and by the circumstances indicating that she was at the time acting in a rational manner. This evidence may have been slight, but it was sufficient to make out a *prima facie* case and it fully warranted the denial of the motion for a nonsuit, or dismissal of the cause, made by the contestant at the close of the proponent's preliminary proof.

The absence of one of the subscribing witnesses was sufficiently explained. The persons who were believed to be the subscribing witnesses were called to testify. One of them had no recollection whatever of the matter. The other testified to the execution of the will, and the attestation by himself and the other person as witnesses. The attestation of a will is not a matter of great importance to the witnesses, and a failure by such persons to remember the occurrence is not so unusual as to justify the refusal of probate on that account, if there is other satisfactory evidence of the due execution.

With respect to the insufficiency of the proof of the destruction of the will we may add, that if the court believed from the facts we have mentioned that the will was in existence after the death of the testator, and that it was locked in her trunk a day or two before her death and while she was in her last sickness, it may have believed the testimony of the two witnesses, Della Sherbourne and Mrs. Beard, to the fact of the destruction of the paper found in the said trunk, and have refused to believe their statements that it was unsigned. This was a matter addressed to the conscience of the trial judge, and we cannot interfere with his decision on the subject.

The judgment admitting the will to probate and the order refusing a new trial are affirmed.

Angellotti, J., and Sloss, J., concurred.