[Civ. No. 8335. First Appellate District, Division One.—February 16, 1932.]

In the Matter of the Estate of SOLOMON SANDMAN, Deceased. HENRIETTA MARKS, Respondent, v. I. LEVY, Executor, etc., et al., Appellants.

10

William H. Schooler for Appellants.

Charles N. Douglas for Respondent.

THE COURT.—On November 15, 1928, the will of Solomon Sandman, deceased, was admitted to probate in the Superior Court in and for the City and County of San Francisco, and letters testamentary thereon issued to I. Levy. The will in question was dated July 18, 1928, and the testator died on October 23, 1928. By its terms there was bequeathed to Henrietta Marks, the daughter of the deceased, the sum of $10; to Mary Nicholson the sum of $500, the residue of the estate being bequeathed to Philip Sandman, a brother of deceased. It also contained a clause revoking a previous will, which was dated November 3, 1926.

On April 8, 1929, Henrietta Marks filed her petition for the revocation of the probate of the will, alleging that the deceased, due to unsoundness of mind at the time of its making, was without testamentary capacity, and for the same reason was incompetent to publish the same at any time between its date and the date of his death. Issue was joined and a trial was had by jury, which returned a verdict for the contestant, by which it was found that the deceased was not of sound and disposing mind and memory. Thereupon judgment was entered revoking the probate of the will. The said Philip Sandman has appealed from the judgment, and claims that the verdict is unsupported.

The evidence shows that the deceased was born in Prussia and came to the United States at the age of twelve years. Philip Sandman, who came to this country later, was younger than the deceased, and after the latter left Prussia the two never met. The deceased at the time of his death was eighty years of age. His wife died in 1917, and contestant was their only child. According to the latter's testimony the deceased shortly after the death of his wife became subject to a delusion that he and his wife were in communication; that she visited and advised him and that he could see her moving through the air; that in 1924 after the birth of contestant's first child deceased stated that it was the wish of his deceased wife that the child be given the latter's name, and he became angry when this was not done. The witness further testified that with this exception her relations with her father were always harmonious; further, that after his wife's burial deceased caused her body to be twice moved to new graves, claiming that she was dissatisfied with

the location and condition of the first two. He also procured the erection over her grave of a tombstone resembling the head of a bed, his reason being that his wife could not rest otherwise. He stated to the witness shortly after his wife's death and on occasions up to near the time of his own death that his wife had talked to him about his will, and had told him to leave his money to his brother. He also asked the witness on one occasion whether her mother had not appeared to her. Contestant's testimony was corroborated by several witnesses, one of whom testified to his statement on one occasion that his deceased wife was dissatisfied with his first will. There was evidence also of other acts indicating an unbalanced mind.

As against this witnesses called for appellant testified that in their opinion he was competent to make a will.

Upon the contest of a will on the ground that the deceased was of unsound mind his mental condition at the time of its execution is the question to be determined (*Estate of Dolbeer,* 149 Cal. 227 [9 Ann. Cas. 795, 86 Pac. 695]; *Estate of Perkins,* 195 Cal. 699 [235 Pac. 45]), it being the rule that the will of one who by reason of unsoundness of mind was incapable of making a valid testamentary disposition of his estate shall not be upheld (*Estate of Chevallier,* 159 Cal. 161 [113 Pac. 130]; *Estate of Wasserman,* 170 Cal. 101 [148 Pac. 931]). It is presumed, however, that a person is sane, and the burden is upon the contestant to show by a preponderance of the evidence that the testator was of unsound mind at the time the will was executed (*Estate of Allen,* 177 Cal. 688 [171 Pac. 686]).

It has been held that mental derangement sufficient to invalidate a will must be insanity in one of two forms: (1) Insanity of such broad character as to establish mental incompetency generally; or (2) some specific and narrower form of insanity under which the testator is the victim of some hallucination or delusion; and that in the latter class of cases the evidence must establish, in addition to the fact of the existence of the hallucination or delusion, that by reason thereof the testator devised or bequeathed his property in a way which he would not otherwise have done (*Estate of Chevallier, supra; Estate of Perkins, supra; Estate of Collins,* 174 Cal. 663 [164 Pac. 1110]).

■ A delusion which will invalidate a will is an insane delusion, that is, a belief which is the spontaneous product of a diseased mind, which comes into existence without reason or evidence to support it, and which is adhered to against reason and against the evidence (*Estate of Shay*, 196 Cal. 355 [237 Pac. 1079]).

■ There can be little doubt from the evidence that the deceased suffered from an insane delusion as above defined; and it further appears that with the one exception mentioned there was no unfriendliness between him and his daughter.

■ Evidence of the state of mind of a testator before or after the date of the testamentary act is relevant, although not conclusive, upon the question of his condition when the will was executed (*Estate of Martin*, 170 Cal. 657 [151 Pac. 138]); and if there exists a logical correlation between it and the issue of mental capacity the question of its weight is one for the jury (*Estate of Sexton*, 199 Cal. 759 [251 Pac. 778]). Nor is the jury concluded by the testimony of an expert, his credibility and the weight to be given his testimony being also for their determination (26 Cal. Jur., Wills, sec. 87, p. 742).

■ It has also been held that the fact that a testator wills all or most of his property away from his wife or children with whom he has lived on apparently friendly terms is a circumstance which, unexplained, tends to show delusion or alienation of reason at the time of the testamentary act (*Estate of Martin, supra; In re Wilson*, 17 Cal. 262, 278 [49 Pac. 172, 711]). As was said in *Estate of Snowball*, 157 Cal. 301 [107 Pac. 598], " . . . in will contests the rule is the same as in other proceedings, that all questions of the weight of the evidence and the credibility of the witnesses are for the jury and the trial court; and if there be any substantial evidence to support the finding or verdict it cannot be set aside by the reviewing court, although such court might believe the great preponderance of the evidence was the other way".

We are satisfied that the evidence supports the conclusion that the deceased was suffering from an insane delusion which had direct and controlling influence upon the testamentary act, and that the judgment should be affirmed.

The judgment is affirmed.