Execution and Authentication of Will: The statutory requirements relative to the execution of a will are all of equal importance, and all must be observed. (In re Noyes' Estate,40 Mont. 178, 105 P. 1013; see, also, Gilbert v. Knox, 52 N.Y. 125;Remsen v. Brinckerhoff, 26 Wend. (N.Y.) 325, 37 Am. Dec. 251; In re Hitchler's Will, 25 Misc. Rep. 365, 2 Gibb. 589;55 N Y Supp. 642; In re Bryant's Estate, 14 N.Y. Supp. 917;Farleigh v. Kelly, 28 Mont. 421, 63 L.R.A. 319, 72 P. 756.)
Mental Unsoundness: If the testator is so weak in body that his mind is not capable of grasping the necessary facts he cannot make a valid will. (Mannatt v. Scott, 106 Iowa, 203, 68 Am. St. Rep. 293, 76 N.W. 717; Johnson v. Cochrane, 159 N.Y. 555,54 N.E. 1092; Darby v. Hindman, 79 Or. 223, 153 P. 56;State v. Lancester, 119 Tenn. 638, 14 Ann. Cas. 953, 14 L.R.A. (n.s.) 991, 105 S.W. 858; Daly v. Daly, 183 Ill. 269,55 N.E. 671; In re Langley's Estate, 140 Cal. 126, 73 P. 824; Page on Wills, sec. 705.) "In determining testator's capacity to make a will, evidence is admissible with reference to the weakness of his memory and his other mental traits." (In reKeithley's Estate, 134 Cal. 9, 66 P. 5.)
Where the testator has willed his property, or the most of it, away from his relations whom he has lived with and with whom he was on friendly terms, such provisions constitute evidence in determining his mental condition at the time of the execution of the will. (In re Gallo's Estate, 61 Cal.App. 163, *Page 188 214 P. 496.) Where a beneficiary sustaining confidential relations with testator has actually participated in procuring the execution of the will, the burden is upon him to show that it was not induced by coercion or fraud. (Estate of Baird,176 Cal. 381, 168 P. 561; Estate of Ricks, 160 Cal. 450,117 P. 532; Estate of Packer, 164 Cal. 525, 129 P. 778; Estate ofHiggins, 156 Cal. 257, 104 P. 8; Estate of Lavinburg,161 Cal. 536, 119 P. 915; In re Logan's Estate, 195 Pa. 282,45 A. 729.)
Undue Influence: An unjust and unnatural disposition of property, especially when coupled with activity in the preparation or execution of the will, raises a presumption of fact that it was procured by undue influence. (In re Lockwood'sEstate, 80 Conn. 513, 69 A. 8, 11; In re Witt's Estate,198 Cal. 407, 245 P. 197; In re Morey's Estate, 147 Cal. 495,82 P. 57; Page on Wills, secs. 716, 721, 731, 732, 741; In reWilliam's Estate, 52 Mont. 192, Ann. Cas. 1917E, 126, 156 P. 1087; In re Wilson's Estate, 117 Cal. 262, 49 P. 172, 711; 1 Schouler on Wills, 5th ed., sec. 77.)
Nonsuit: The general rule laid down by many cases is that questions of fact arising in an action to determine the validity of a will are no different in this respect from questions of fact in any other case. When evidence is given of such a character that different inferences may fairly and reasonably be drawn from it, the fact must be determined by the jury. In will contest cases the credibility of witnesses and the weight to be given to their testimony are for the jury. (In re Wall's Estate,183 Cal. 431, 191 P. 687; Estate of Snowball, 157 Cal. 301,107 P. 598; Estate of Johnson, 152 Cal. 778, 93 P. 1015; In reMurphy's Estate, 43 Mont. 353, 370, Ann. Cas. 1912C, 380, 106 P. 1004; Berger v. Lane, 190 Cal. 443, 213 P. 45; In reArnold's Estate, 147 Cal. 583, 82 P. 252; Burns v.Jackson, 53 Cal.App. 345, 200 P. 80; In re Sandman'sEstate, 121 Cal.App. 9, 8 P.2d 499; In re Taylor'sEstate, 92 Cal. 564, 28 P. 603.) *Page 189 
Due Attestation: In case of doubt, the recitals of an attestation clause are always to be considered. (Estate ofDowl, 181 Cal. 106, 183 P. 794.) Testimony of a witness who has solemnly subscribed his name to a will, as an attesting witness, knowing the nature of his act and that decedent would rely upon his signature as a part of the execution of the will, who casts doubt upon its due execution, should be closely scrutinized. (Estate of Motz, 136 Cal. 558, 69 P. 294.) And, in Estate of Nelson, 132 Cal. 182, 64 P. 294, the court held it not error to instruct the jury that testimony of an attesting witness, who testified adversely to the instrument, was entitled to little weight. (26 Cal. Jur. 752.) And if the direct evidence in the case leaves the mind in doubt as to whether the statutory formalities were observed, an inference in favor of due execution is to be derived from the fact that the ceremony was supervised by a lawyer who was familiar with the requirements. (Estate ofJohnson, 152 Cal. 778, 93 P. 1015.)
The supreme court of California has laid down the rule to be applied in this very class of cases in Estate of Kent, 161 Cal. 142,118 P. 523, wherein it declares the presence of such a clause "may be resorted to as presumptive evidence that the statutory requirements recited therein to have been performed were complied with, as, for instance, when it recites that the will was signed by the testator in the presence of the attesting witnesses, declared to be her will, and that their signatures to the will, as witnesses, were signed at the request of the testator, in his presence and in the presence of each other." (26 Cal. Jur. 794.) "It is not essential that testator should expressly ask the subscribing witnesses to sign or expressly declare the instrument to be his will." (In re Adams' Estate,149 Okla. 90, 299 P. 226; see, also, In re Miller's Estate,37 Mont. 545, 97 P. 935; In re Cullberg's Estate, 169 Cal. 365,146 P. 888.) *Page 190 
In 26 Cal. Jur. 753 it is said: "Where it appears that the execution of the propounded instrument was supervised by a lawyer, the opinion of the latter that the deceased was of sound mind, has peculiar probative force, being considered to outweigh the opinions of the physicians, who base their conclusions upon the conditions of the deceased at other times than that of execution, or who testify as experts." (In re Kane's Estate,206 Pa. 204, 55 A. 917; Phillip's Estate, 299 Pa. 415,149 A. 719; Kustus v. Hager, 269 Pa. 103, 112 A. 45;Masseth's Estate, 213 Pa. 136, 62 A. 640; Morgan's Estate,219 Pa. 355, 68 A. 953, 954; Hamilton v. Fay, 283 Pa. 175,128 A. 837, 838.)
No inference of undue influence arises because of a confidential relation. (28 R.C.L., p. 146, sec. 100; Ginter v.Ginter, 79 Kan. 721, 22 L.R.A. (n.s.) 1024, 101 P. 634.) It is doubtful if this will can be called an unnatural will, but even in such cases, such fact, within itself, affords no sufficient proof of undue influence, and does not raise a presumption of undue influence in the making of the will. (28 R.C.L. 149; Mallow v. Walker, 115 Iowa, 238, 91 Am. St. Rep. 158, 88 N.W. 452; Dausman v. Rankin, 189 Mo. 677, 107 Am. St. Rep. 391, 88 S.W. 696; Towson v. Moore, 173 U.S. 17,43 L.Ed. 597, 19 Sup. Ct. Rep. 332; Waters v. Waters, 222 Ill. 26, 113 Am. St. Rep. 359, 78 N.E. 1.)
Subdivision 2 of section 10032, Revised Codes, 1921, provides, as a ground of contest: "The freedom of the decedent, at the time of the execution of the will, from duress, menace, fraud or undue influence." Pressure must be exercised at the time of the execution of the will. (Hale v. Smith, 73 Mont. 481, 486,237 P. 214; Estate of Langford, 108 Cal. 608, 41 P. 701.) Suspicious circumstances cut no figure. (Estate of McDevitt,95 Cal. 17, 30 P. 101; Estate of Black, 132 Cal. 392,64 P. 695; Morcel's Estate, 162 Cal. 188, 121 P. 733; Everett'sEstate, 163 Cal. 499, 125 P. 1058; Hodgdon's Estate, 23 Cal.App. 415,138 P. 111; In re Overpeck's Will, 144 Iowa, 400,120 N.W. 1044; 40 Cyc. 1145.) The proof must be substantial so that it may be seen by whom and in what *Page 191 
manner influence was exercised and what effect it had on the will. (Ginter v. Ginter, supra; Carey's Estate,56 Colo. 77, Ann. Cas. 1915B, 951, 51 L.R.A. (n.s.) 927, 136 P. 1175.) Mere proof of opportunity to influence a testator's mind, even when coupled with an interest, will not sustain a finding of undue influence. (21 Cal. Jur. 651.) Undue influence sufficient to set aside a will is not established by such proof as was introduced here. "Proof to establish undue influence must be had of a pressure which overpowered the mind and bore down the volition of the testator, at the very time the will was made." (Estate of Carithers, 156 Cal. 422, 105 P. 127; Holloway'sEstate, 195 Cal. 711, 235 P. 1012; Hubbard v. Hubbard,7 Or. 42; Smith's Exr. v. Smith, 67 Vt. 443, 32 A. 255;Riley v. Sherwood, 144 Mo. 354, 45 S.W. 1077; McCulloch v.Campbell, 49 Ark. 367, 5 S.W. 591; Armstrong v. Armstrong,63 Wis. 162, 23 N.W. 407.)
The evidence relating to the incompetency of the testatrix was insufficient under the following authorities: 28 R.C.L. 104, sec. 55; 14 Ency. of Evidence, 355; Shreiner v. Shreiner, 178 Pa. St. 57, 35 A. 974; Hill v. Crow, (Tex.Civ.App.)241 S.W. 184; Adkins v. Hensen, (Tex.Civ.App.) 256 S.W. 267; Speer
v. Speer, 146 Iowa, 6, 140 Am. St. Rep. 268, 27 L.R.A. (n.s.) 294, 123 N.W. 176; Slingloff v. Bruner, 174 Ill. 561,51 N.E. 772; Holmberg v. Phillips, (Iowa) 78 N.W. 66; Horner v.Buckingham, 103 Md. 556, 64 A. 41 [testator suffering with Bright's disease]; In re Barber's Will, (N.J. Eq.) 49 A. 826;In re Gihon's Will, 44 App. Div. 621, 60 N.Y. Supp. 65, order affirmed, 163 N.Y. 595, 57 N.E. 1110 [testator afflicted with Bright's disease]; In re McKean's Will, 31 Misc. Rep. 703,66 N Y Supp. 44; Collins v. Long, 95 Or. 63, 8 A.L.R. 1370, 186 P. 1038; Re Johnson, 57 Cal. 529; Re Barlow's Will,180 App. Div. 860, 168 N.Y. Supp. 131; Sturtevant's Estate, 92 Or. 269,178 P. 192, 180 P. 595.
The following California cases illustrate the rule applied with regard to testamentary capacity, where delusions were shown to be present: Estate of Kendrick, 130 Cal. 360, 62 P. 605;Estate of Chevallier, 159 Cal. 161, 113 P. 130; Estate of *Page 192 Perkins, 195 Cal. 699, 235 P. 45; Estate of Redfield,116 Cal. 637, 38 P. 794.
The burden of proof will not be shifted to the proponent to show that the will was made during a lucid interval unless the contestant established habitual and fixed insanity. (14 Ency. of Evidence, 280.)
In Re Murphy's Estate, 43 Mont. 353, Ann. Cas. 1912C, 380, 116 P. 1004, brought from this court an appreciation of the fact: "That jurors are often inclined to disregard the evidence and to set aside a will * * * because the dispositions made by the testator do not comport with their personal notions * * * and that, in all such cases, it is incumbent upon a court not to permit a will to be set aside except upon such substantial evidence tending to show that it is not, in fact, the will of the testator." In 28 R.C.L. 406, section 418, the text-writer, after calling attention to such disposition of a jury, declared: "Therefore, it is incumbent upon the court not to permit a will to be set aside except upon substantial evidence." And it is especially stated to be the rule that the court cannot be too careful in excluding incompetent evidence of undue influence. (See, also, Kaufmans' Estate, 117 Cal. 288, 59 Am. St. Rep. 179, 49 P. 192.) It is well recognized that nonsuits are proper in will contests. (26 Cal. Jur. 1102, sec. 357.) Indeed, where the evidence is as inherently weak as in this case, even the irregular granting of a nonsuit without a motion being made will be sustained. (In re Higgins' Estate, 156 Cal. 257, 104 P. 6;In re Morey's Estate, 147 Cal. 495, 82 P. 57.)
This is an appeal from a judgment entered on petition of Dr. E.G. Harris admitting to probate an alleged will of Nettie M. Cummings, deceased, and appointing him executor. Minnie E. Spooner filed objections to the probate of the will, averring as the grounds (1) that the will was not properly executed; (2) mental incompetency of the testatrix; and (3) *Page 193 
undue influence exerted by Dr. Harris. Issues being joined, the cause was tried to the court sitting with a jury. At the conclusion of the evidence offered by contestant, the court sustained a motion for nonsuit, which was followed by the judgment appealed from.
The appeal presents the question of the propriety of the court's ruling in sustaining the motion for nonsuit.
Mrs. Cummings died on May 1, 1929, then and for many years prior thereto a resident of Harlowton, Wheatland county. The will in question is dated April 12, 1929. Deceased left surviving her a sister, Minnie E. Spooner, contestant, and six nephews and six nieces. The will, after providing for the payment of debts, expenses of last illness, and funeral expenses, bequeathed $2,000 to Mrs. Robert G. Anderson, who acted as nurse for testatrix for about a month prior to her death; to Mrs. Spooner "the rents and income during her lifetime of and to what is known as the Olympia Pool Hall Building in Harlowton," and "any income that may be derived from my personal property." The residue of the estate was devised and bequeathed to Dr. Harris, who was not related to testatrix, and who had been acquainted with her for less than a year, "to be used by him as he sees fit and be expended by him as he sees fit for the benefit of extending hospital facilities in the city of Harlowton, Montana, or any other worthy purpose as he may see fit, or as he may elect, I reposing special faith and confidence in him and leaving the estate remaining after the death of my beloved sister, hereinabove named, to him as he sees fit to use it." The will contained the usual clause revoking prior wills. If valid, it, of course, revoked a prior will made by testatrix on December 30, 1926, in which she devised and bequeathed all of her property to Mrs. Spooner.
Dr. Harris and Charles A. Johnson were nominated by the will of April 12 to act as executors and the legal guardians and custodians of the income for the purpose of maintaining Mrs. Spooner, and the will provided that, if it be necessary that a *Page 194 
legal guardian be appointed for her, the executors be appointed as such. After the instrument was signed, it was held by Dr. Harris until the death of Mrs. Cummings. Johnson declined to act under the appointment.
The petition for the probate of the will recites that the property left by the deceased consisted of real estate worth $6,000, cash and personal property amounting to $5,000.
At the time the will was executed Mrs. Cummings was sixty-five years of age. She was then suffering from what Dr. Harris, her attending physician, said was "a cardia renal complex." She had endocarditis, or what is commonly called leakage of the heart, coupled with a chronic nephritis, generally termed Bright's disease. The leakage of the heart had existed for many years, while the Bright's disease had existed only about two years. The Bright's disease is shown to be one which causes a toxic condition of the blood, resulting in poisonous matter being disseminated throughout the body.
Mrs. Cummings occupied an apartment across the hall from that of her sister, Mrs. Spooner. The two had sustained most intimate and friendly relationship and lived together for many years. The will, according to some of the evidence, was signed shortly after midnight, and other evidence was to the effect that it was signed about 2 o'clock in the morning of April 12. It was prepared and executed in the following manner: Dr. Harris called Attorney Barncord from his room in the hotel at Harlowton between 10:30 and 11:15 P.M. on April 11 and requested him to draft the will in accordance with instructions contained in a written memorandum furnished by him to Mr. Barncord. The instructions he said were given him by Mrs. Cummings. The will was accordingly written by Mr. Barncord, after which Dr. Harris and Barncord went to the bedside of Mrs. Cummings to have it executed. Mrs. Robert Anderson thereupon called in Charles A. Albers to act as one of the witnesses. As to what transpired at the time of the execution of the will the evidence is conflicting. Barncord, one of the subscribing witnesses, testified to facts from which it would appear that the will was properly executed in the presence of *Page 195 
both witnesses. In this he was corroborated by Dr. Harris. Mr. Albers, the other subscribing witness, in relating what transpired after he was called to Mrs. Cummings' apartment, said: "She [Mrs. Cummings] was sitting in a chair with some pillows propped up behind her, with a cot to her, this way (illustrating), and she had her feet and legs up on the cot." He was introduced to her, and, when asked what she said, if anything, he said: "She didn't say anything. * * * She sat there and seemed to be staring at one object." Either Dr. Harris or Mr. Barncord, he said, asked him to sign as a witness, but Mrs. Cummings did not raise her head or pay any attention to what was said. He further testified: "Dr. Harris procured a book and laid this instrument on it, and laid it out on her lap before her, and took a fountain pen from his pocket and put it between her thumb and fingers." When asked, "And did he guide her hand?" he said, "He was bent over her and I couldn't see exactly; he seemed to be watching her sign her name," but he said he did not see her sign it. It was then handed to Mr. Barncord, who signed it, and then it was presented to the witness, folded in such manner that he was unable to see any typewriting on it, and he signed it. He said Mrs. Cummings did not say or do anything to indicate that the instrument was her last will and testament, and did not show any signs of intelligence while he was in the room; that she did not speak a word while he was in the room; that in his judgment she did not appear rational; that she appeared to him "to be in a sort of daze and didn't wholly realize what was taking place." In his opinion she was not able to understand the ordinary transaction of business.
At about 11 P.M., on April 13, he was called by Dr. Harris to act as a witness to another will made by Mrs. Cummings. She then appeared to be in about the same condition as when the one was executed on April 12. For this, Dr. Harris paid him $5. The will of April 13 was admittedly not properly executed, and was denied probate. This will was like unto the one of April 12, except that, instead of bequeathing $2,000 to Mrs. Anderson, it gave her but $500, and, instead of giving *Page 196 
the sister, Mrs. Spooner, all the income from her property, it authorized and empowered the joint executors "to use their own, joint, judgment, as to what amount is necessary per month to be expended by them in so maintaining" her during the remainder of her life. It also, unlike the will of April 12, made provision that, in the event Dr. Harris should die before Mrs. Spooner, the residue should then go to some one designated by him.
Mrs. Johnson, who had been intimately acquainted with Mrs. Cummings for about two years prior to her death and who frequently visited her, and for about nine months lived in the same apartment house with her, said she saw Mrs. Cummings on April 11 and April 12, and noticed a marked change in her condition from what it had been several days previously; that "she seemed to be more feeble"; and "she knew me and seemed glad to see me, but in a little while her mind wandered off"; that she kept repeating the same thing over and over; that she was in no condition to converse with the witness; that "she was a very sick lady and her eyes had a protruding, glassy appearance."
Frederick Spooner testified by deposition that he visited Mrs. Cummings on April 11 and that "she looked to me as if she was full of dope and that she didn't know much of anything." He was not able to carry on an intelligent conversation with her. He visited her again two or three times on the 12th of April and found her in the same condition. He said, "She was dumb, perfectly." He saw her on April 13 and two or three times each day thereafter until her death, and she remained in the same condition.
Mrs. Stevens, who lived as a next-door neighbor of Mrs. Cummings for many years, visited her on April 8 and again on April 12, after the will had been made, and Mrs. Cummings did not recognize her. She said Mrs. Cummings was delirious and thought her feet were stuck in the mud, and "she was very short of breath and excitable," and her eyes were very glassy. *Page 197 
It was stipulated that if Dr. E.M. Gans were present he would testify that endocarditis, coupled with nephritis existing for two years in a lady sixty-five years of age, would cause her to have toxemia or an acute toxic condition, which in time would impair her mental faculties; that the condition causes a poisoning which would be carried by the blood to the brain and, in consequence, would impair the mind.
In considering the propriety of taking the case from the jury,[1, 2] we must view the evidence in the light most favorable to the party against whom it is claimed the evidence is insufficient (Johnson v. Herring, 89 Mont. 420, 300 P. 535;Boyd v. Great Northern Ry. Co., 84 Mont. 84, 274 P. 293), bearing in mind, however, that, unless there is substantial evidence tending to nullify the instrument, the court should not permit it to be set aside (In re Murphy's Estate, 43 Mont. 353, Ann. Cas. 1912C, 380, 116 P. 1004), and hence need not submit the issues to a jury. And, where the evidence produced by a party is itself conflicting, it should go to the jury, notwithstanding the conflict, if that most favorable to him makes out a case. (Hardie v. Peterson, 86 Mont. 150, 282 P. 494; Gohn v.Butte Hotel Co., 88 Mont. 599, 295 P. 262.)
Under our statute it is essential to the validity of a will,[3] among other things, that the testator at the time of subscribing or acknowledging the will declare to the attesting witnesses that the instrument is his will, and the attesting witnesses must sign at the testator's request. (Sec. 6980, Rev. Codes 1921; In re Noyes' Estate, 40 Mont. 178, 105 P. 1013.) But it is not essential that the testator should expressly request the witnesses to attest the will or expressly declare the instrument to be his will; that the instrument is the will of the testator may be shown by acts and conduct, and the request for the witnesses to sign it may come from another if there be intelligent acquiescence by the testator. (In re Miller'sEstate, 37 Mont. 545, 97 P. 935.)
On the issue of the due execution of the will, the testimony[4] of Charles Albers was substantially the same as that of *Page 198 
Estabrook in the case of In re Williams' Estate, 50 Mont. 142,145 P. 957, which was held fatal to the will, if believed, on the ground that it justified a finding that the essential requirements that the testator must declare to the attesting witnesses that the instrument is his will and must request the witnesses to sign it as such, were not complied with.
Counsel for the proponent of the will contend that, since[5] someone other than Mrs. Cummings stated in her presence and in the presence of the witness Albers that "it is necessary that you [the witness] know it is a will that is about to be executed," and since Mrs. Cummings made no protest, the law implies a declaration and request on her part. This contention cannot prevail here, for, if Albers' testimony be accepted, there were no acts or words of Mrs. Cummings to indicate that the instrument was her will which was being executed, or that it was her desire that he attest it. True, there is authority to the effect that silence on the part of the testator, where the request is made by another in his presence, is alone sufficient to indicate that the request is by authority. (In re Adams'Estate, 149 Okla. 90, 299 P. 226; In re Cullberg's Estate,169 Cal. 365, 146 P. 888.) If we assume that this is the correct rule as applied to a testator of sound mind, it has no application here, for here there was evidence, substantial in character, that testatrix was not, at the time the will was made, mentally competent, and evidence which negatived intelligent acquiescence on her part.
To prove declaration and request by the testator, it is not[6] sufficient that the witness knows he is attesting a will. He must know from the words, acts or conduct of the testator that the instrument represents the testator's will, rather than that of a beneficiary or other person, and it must appear that the request for the witness to sign as such, when made by another, is intelligently acquiesced in by the testator.
We do not hold that the will was not in fact properly executed, but only that in the light of the evidence the question should have gone to the jury. It was for the jury to *Page 199 
weigh the evidence and pass upon the credibility of the witnesses.
In the Adams Case, supra, the proper tribunal weighed the conflicting evidence, and the supreme court refused to interfere with the lower court's finding on it; hence the case is not helpful here. Here the issue is by statute made one for the jury upon demand. (Sec. 10032, Rev. Codes 1921.) Whether such a demand was made the record does not disclose, but we indulge the presumption that, since the court was actually trying the case before a jury, a demand was made or, if not, that the requirement of a written demand was waived. The jurors were at liberty to accept Albers' testimony and find that there was not any declaration by testatrix that the instrument was her will and that she did not request him to attest it as a witness, or they could believe Mr. Barncord and Dr. Harris and reach the contrary conclusion. (In re Williams' Estate, 52 Mont. 192, Ann. Cas. 1917E, 126, 156 P. 1087.)
We have not overlooked the contention made by the proponent[7] that the witness Albers is concluded by the attesting clause where, as here, he admitted knowledge of what such a clause would contain. But those recitals are not always conclusive on the issue of declaration and request. (In reWilliams' Estate, 50 Mont. 142, 145 P. 957.)
Under the evidence here presented, the issue of the due execution of the will was one for the jury.
Should the question of the mental competency of testatrix have been submitted to the jury? Before discussing this question, we must first determine whether the testimony of Charles Albers on the point was properly admitted in evidence. Counsel for proponent contend that it was not, and that the objection to the evidence for want of proper foundation should have been sustained because he had not known Mrs. Cummings prior to the time of attesting the will and therefore did not come within the rule permitting an intimate acquaintance to give an opinion of her mental condition.
It is true that this witness did not qualify as an intimate *Page 200 [8] acquaintance. But it was not necessary that he should qualify as such. Subscribing witnesses to a will need have no special qualifications to give an opinion of the testamentary capacity of the testator. (1 Wigmore on Evidence, 2d ed., sec. 689; 22 C.J. 609; In re Olson's Estate, 176 Minn. 360,223 N.W. 677; Ritchey v. Jones, 210 Ala. 204, 97 So. 736; East v.Karter, 218 Ala. 366, 118 So. 547.) This general rule exists in statutory form in this state. (Subd. 10, sec. 10531, Rev. Codes 1921.) The evidence was properly received. The lack of acquaintance and opportunity for observation went to the weight of the evidence and not to its admissibility.
"When applied to the capacity required to make a valid will,[9] the word `incompetent' should be construed to apply to any person, whether sane or insane, who is by reason of old age, disease, weakness of mind, or other cause, unable to understand what property he has, the relationship which he bears to those who would naturally be the objects of his bounty, and the disposition of his property he may at the time be making. (In reCarroll's Estate, 59 Mont. 403, 196 P. 996.)" (In reBielenberg's Estate, 86 Mont. 521, 284 P. 546, 548.)
The evidence bearing upon the competency of testatrix to make[10] a valid will was conflicting. That most favorable to contestant was ample to warrant the submission of the issue to the jury, and the court erred in not submitting it.
Other questions that have been briefed and argued require no consideration, since it does not appear that upon another trial they will arise in the same manner.
For the reasons stated, the judgment is reversed and the cause remanded for a new trial.
MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, FORD and MATTHEWS concur. *Page 201