# In re SALES' ESTATE. SALES, Respondent, v. COWAN et al., Appellants.

(No. 7,850.)

(Submitted April 4, 1939. Decided April 20, 1939.)

[89 Pac. (2d) 1043.]

*Mr. Wellington D. Rankin* and *Mr. Arthur P. Acher,* for Appellants, submitted a brief; *Mr. Acher* argued the cause orally.

204

*Messrs. Landoe & Morrow,* for Respondent, submitted a brief; *Mr. J. H. Morrow, Jr.,* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This is an appeal from a judgment and order admitting a will to probate. The probate of the will was contested by three daughters of the deceased upon the ground that the testator at the time of making it was lacking in testamentary capacity. The appeal raises the question whether there is any substantial evidence in the record to support the court's judgment.

Witnesses for the proponent of the will testified that in their opinion the testator had the mental capacity to make an intelligent will and testified to facts upon which their opinions were based. Appellants, in reliance upon the case of *Casey* v. *Northern Pac. Ry. Co.,* 60 Mont. 56, 198 Pac. 141, take the view that the sworn testimony offered by the proponent of the will must

be disregarded as inherently improbable in the light of the admitted physical condition of the testator at the time, coupled with the fact that he died about an hour and a half after the will was made.

The undisputed facts are these: The testator, Charles Alfred Sales, a farmer residing in the Gallatin Valley, became sick and was suffering from intestinal colic on Wednesday, June 30, 1937. He was then 82 years of age. A doctor was called and after being treated he recovered sufficiently to be able to get about and attend to his usual work of milking cows and doing chores. On Friday, July 2, he was again taken sick. The doctor was called and about 1 o'clock P. M. on that day he was removed to the Deaconess Hospital in Bozeman. The will in question was executed at about 2:45 or 2:50 P. M. on that day, and at about 4:20 on the same day the testator died.

The evidence relating to his mental condition at the time the will was executed was conflicting, unless that offered by the proponent was unworthy of belief. Viewing the evidence on that point in the light most favorable to the prevailing party, as we must, we find in the record evidence supporting the following conclusions: On July 2, and while in the hospital, the testator requested his son to procure a lawyer for the purpose of making a will, stating that he desired everything to go to his wife. On occasions prior to this he had stated that such was his plan. The son in accordance with the directions of the testator procured the services of attorney Morrow to draw the will. Mr. Morrow drew the will in accordance with the directions given him by the son, and took it to the hospital, where it was signed in the presence of two nurses as witnesses. The testator at that time was weak physically, but there was evidence that he was alert mentally. The will was read to him, and, as originally drafted, the will recited that testator was 83 years of age. When that portion of the will was read, the testator called Mr. Morrow's attention to the fact that he was only 82 years of age, and the correction was accordingly made. After the will was read to him he was asked if it was his will, and he nodded assent and answered ''Yes.'' Because of his

weakened physical condition one of the nurses, at the suggestion of Mr. Morrow to which testator assented, guided his hand as he signed it. There is evidence, however, that the first three letters of the word "Charles" were written by the testator without assistance from the nurses or anyone else. At this point it is proper to observe that a will executed in this manner is properly subscribed within the meaning of our statute. (Rev. Codes 1935, sec. 6980; *In re Miller's Estate*, 37 Mont. 545, 97 Pac. 935.)

After the will was subscribed the testator, in response to a question put to him, by nodding and answering "Yes" indicated a desire that the two nurses sign as witnesses, which they did at the time and in the manner required by statute. Mr. Morrow who drew the will and the two subscribing witnesses all testified that the testator responded to questions put to him and seemed to understand what he was doing, and gave it as their opinion that he was mentally competent to make a will at the time. The attending physician testified that at noon he knew that the testator was going to die, but that his mind at that time was clear and this condition prevailed as late as 1:15 P. M., when he last saw him, until at about 3:45 P. M. He testified that at about 3:45 the testator was so near death that he was then lacking in mental capacity to make a will.

We find nothing in the record to warrant us in holding that the evidence in support of the testator's mental capacity at the time of making the will is unbelievable within the rule announced in the Casey and kindred cases. There were sharp conflicts in the evidence, but those were all resolved by the trial court under advantages, denied to us, of personal observation of the witnesses. The question before us is: Does the record contain substantial evidence to support the judgment? (*Murphy v. Nett*, 47 Mont. 38, 130 Pac. 451; *In re Carroll's Estate*, 59 Mont. 403, 196 Pac. 996; *In re Bright's Estate*, 89 Mont. 394, 300 Pac. 229.) We find there is substantial evidence to support the trial court's determination.

Appellants contend that the opinions of the nurses are lacking in weight and should be disregarded because they had

not known or seen the testator before he came to the hospital, and as to one of them because she had not seen him until she went into the room to witness the execution of the will and was not in the room to exceed five or ten minutes. Under our statute, subdivision 10 of section 10531, Revised Codes, the opinion of a subscribing witness to a writing respecting the mental sanity of the signer is admissible. This is the general rule elsewhere. (See note in 93 A. L. R. 1049.) The lack of acquaintance and opportunity for observation simply affected the weight but not the admissibility of the evidence. (*In re Cummings' Estate*, 92 Mont. 185, 11 Pac. (2d) 968) The weight to be given the opinions was for the trier of the facts.

It is argued that the opinion of the attending physician should be disregarded because it was based upon the opinion of the nurses. The record discloses that the attending physician did state that he based his opinion upon the opinion of the nurses. Later, however, he stated in substance that what he meant by the opinion of the nurses was the information given by the nurses as to the facts.

Appellants' contention that there is no evidence in the record to support the court's judgment cannot be upheld.

The judgment and order are affirmed.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES MORRIS, STEWART and ERICKSON concur.