[Civ. No. 7890.   Fourth Dist., Div. Two.   Nov. 7, 1966.]

STEVE J. SPONDURIS, Plaintiff and Appellant, v. WIL-LIAM ALBERT HASLER et al., Defendants and Respondents.

Robert E. Krause for Plaintiff and Appellant.

McBain & Morgan and Angus C. McBain for Defendants and Respondents.

McCABE, P. J.—Plaintiff appeals from a judgment upon a jury verdict adverse to him.

Liberty Street, 18 feet wide, forms a "T" intersection with

Highway 39 (sometimes referred to in the evidence as Beach Boulevard) in the City of Huntington Beach. Highway 39 at the "T" intersection goes north and south with two lanes in both directions divided by a concrete divider with indented turn lane for northbound traffic. In practical effect, the indented left turn lane forms a third lane for northbound traffic desiring to make a left turn at the "T" intersection. On the east side of Highway 39 and some distance easterly of Highway 39, plaintiff operated a small cafe. For visualization purposes it may be stated that if traffic flowing easterly on Liberty Street desired to do so it could make a right angle crossing of Highway 39 and enter the parking area reserved for the cafe. There is no curb along the easterly side of the traveled part of Highway 39. Except for the ending of the paved portion of Highway 39 and the commencement of parking area for the cafe, there are no other distinguishing physical features between the east side of Highway 39 and private property. On the southwest corner of Liberty Street and Highway 39 which is across Highway 39 from plaintiff's cafe are a market and a liquor store. On the north and east sides of these stores, there is off-street diagonal parking for vehicles. There is no curb, barrier, marking or other delineation for pedestrian travel on the west side of Liberty Street (where the stores are located) as it approaches or intersects with Highway 39. At the time of the accident there was an overhead street light which illuminated the intersection.

Plaintiff had crossed Highway 39 to go from his cafe to the market on the southwest corner of Highway 39 and Liberty Street to make some purchases. After completing this business, he started to walk back to his cafe, crossed the southbound lane of Highway 39 and attained the safety of the concrete divider. After looking to his right and waiting for several cars to pass, plaintiff proceeded to cross the northbound traffic lane of Highway 39. He walked somewhat diagonally from southwest to northeast across Highway 39 toward his cafe.

Defendant, a used-car dealer, driving a 1961 Mercedes Benz automobile (although not owned by him, we will refer to the vehicle as defendant's vehicle) was traveling north on Highway 39 at a speed testified to by him as being 40-45 miles per hour in a 50-mile-per-hour zone. The lights of defendant's vehicle had been switched on for defendant testified it was starting to get dark. The date and hour of the events here in question were January 16 at about 7 p.m. The brakes and

headlights on defendant's vehicle were in good working order. His vehicle was equipped with new tires.

According to defendant driver's testimony, he was traveling north in the right hand lane of Highway 39. As he approached the intersection of Liberty Street and Highway 39, his attention was attracted to a shadow or movement near the center of the street. Defendant driver eased up on the accelerator and started gently to apply the brakes. Defendant driver did not see plaintiff until the impact between his vehicle and plaintiff's body. Defendant's car left 143 feet of tire marks in the right hand lane of Highway 39 which marks extended 18 feet beyond the point of impact. At about the time of the impact defendant driver testified he was pulling to the right to avoid plaintiff. At the point when defendant's car stopped after the accident, it was almost entirely off Highway 39 and on the right hand side of the highway.

Plaintiff was severely injured. Defendant's car had several dents on the left front fender.

On appeal plaintiff assigns as error (1) the giving of defendant's requested instruction No. 4 as modified; (2) the refusal to give plaintiff's instruction which set out the provisions of section 275, Vehicle Code; and (3) the refusal of the trial court to allow plaintiff to impeach on the grounds of surprise, a witness called by him.

Defendant's instruction No. 4 as given by the court read: "At the time of this accident, California Vehicle Code, section 21954 provided in part:

"(a) Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway.

"You are instructed that at the time of this accident plaintiff was not crossing Highway 39 in either a marked or an unmarked crosswalk."

Plaintiff's proposed but refused instruction read: "*Crosswalk.* 'Crosswalk' is either:

"(a) That portion of a roadway included within the prolongation or connection of the boundary lines of sidewalks at intersections where the intersecting roadways meet at approximately right angles, except the prolongation of such lines from an alley across a street.

"(b) Any portion of a roadway distinctly indicated for pedestrian crossing by lines or other markings on the surface.

"California Vehicle Code—Sec. 275."

We will consider the assigned errors (1) and (2) together for the legal point raised evolves about the same evidence.

Section 275, Vehicle Code, in pertinent part provides: " 'Crosswalk' is either: (a) That portion of a roadway included within the prolongation or connection of the boundary lines of sidewalks at intersections where the intersecting roadways meet at approximately right angles, except the prolongation of such lines from an alley across a street.

"(b) Any portion of a roadway distinctly indicated for pedestrian crossing by lines or other markings on the surface."

Section 555, Vehicle Code, defines a sidewalk as follows: " 'Sidewalk' is that portion of a highway, other than the roadway, set apart by curbs, barriers, markings or other delineation for pedestrian travel."

A pedestrian's duty of care crossing a roadway at other than a marked or unmarked crosswalk is statutorily defined in section 21954, Vehicle Code, as follows: "(a) Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway.

"(b) The provisions of this section shall not relieve the driver of a vehicle from the duty to exercise due care for the safety of any pedestrian upon a roadway."

■ There was evidence presented to the jury consisting of testimony and photographs of the intersection of Liberty Street and Highway 39. The evidence is subject to only one conclusion and reasonable men could not differ on it: There were no curbs, barriers, markings or other delineation for pedestrian travel on the south side of Liberty Street and there were no sidewalks on either the south or north side of Liberty Street. This being the state of the evidence, the court's refusal to give plaintiff's proffered instruction was proper. To have given it would seemingly create an issue for determination by the jury where none existed and the evidence does not warrant.

Plaintiff argues that even though there is no evidence upon which a definition of crosswalk could be applied, it was error for the trial judge to give an instruction to the jury that no crosswalk, marked or unmarked, existed. ■ Plaintiff misconceives the law for if there is no evidence supporting an issue, the trial court may so inform the jury. No error

occurred by the trial court instructing the jury under the facts of this case: "You are instructed that at the time of this accident, plaintiff was not crossing Highway 39 in either a marked or unmarked crosswalk."

Plaintiff has cited cases which he believes support his legal position that the fact of whether there existed an unmarked crosswalk should have been allowed to go to the jury for determination. The Vehicle Code definition of "crosswalk" has been legislatively changed since the date when the cases cited to us were decided. It would serve no useful purpose to give the citations of the cited cases. The former Vehicle Code definition included "that portion of the roadway ordinarily included within the prolongation of the boundary lines of sidewalks at intersections . . ." Obviously the verbiage of the applicable section has been materially changed, therefore, the cases cited by plaintiff are not in point.

■ Plaintiff's last contention is: The court erred in not allowing the impeachment of a witness called by plaintiff. A Mr. Wood who witnessed the accident was called by plaintiff. On the direct examination, plaintiff asked the witness questions to which the response was: "I don't remember." Upon receiving this answer, plaintiff produced a paper, allegedly a written statement signed by Mr. Wood, approximately two weeks after the accident. Questions were asked by plaintiff of the witness whether by reading the statement his memory would be refreshed. The witness replied he had read it about a week before the trial. Plaintiff then asked if the defendant driver had made a statement at the scene of the accident. The witness replied the driver had said something but he didn't remember the statement. After an unrecorded conference at the bench with the judge and counsel, the witness was shown the written statement and requested to read it. Apparently, the witness read the statement, for plaintiff asked him, "Does that now refresh your recollection as to what you observed and saw and heard . . . on the 16th of January 1963?" To this question an objection was interposed by defendant. Plaintiff then represented to the court he was surprised and requested permission of the court "to impeach the witness by his statement." The court observed, ". . . you haven't laid any foundation so far, either for impeachment or for refreshing recollection." This statement was a correct one. The witness had testified he didn't remember. If plaintiff was surprised that the witness didn't remember, there is no ground for impeachment. ■ The answer to plaintiff's contention that

he was surprised is adequately expressed in *People* v. *Newson*, 37 Cal.2d 34, 41 [230 P.2d 618] : "In 1872, the California Legislature enacted section 2049 of the Code of Civil Procedure, which provides: 'The party producing a witness is not allowed to impeach his credit by evidence of bad character, but he may contradict him by other evidence, and may also show that he has made at other times statements inconsistent with his present testimony. . . .'

"However, the prior statements inconsistent with the witness' present testimony can only be considered for the purpose of neutralizing and counteracting the effect of his statements upon the trial.

"The purpose of the statute is to allow a party to wipe out, as nearly as possible, the evidence which has been given. Where a witness states no fact against the party calling him, there is nothing to counteract. The testimony which may be contradicted must be prejudicial and detrimental, otherwise the previous statement shown would stand out, not as offsetting contrary testimony already given, but as substantive evidence of a fact."

After this interlude, plaintiff sought to read into the record through the form of his questions certain parts of the written statement. The court properly sustained objections to the questions. Plaintiff then proceeded to ask the witness questions as to whether, having read the written statement, his memory was refreshed. The witness then gave answers as to what defendant driver had said at the scene, the car "didn't skid that far. . . ." Plaintiff then questioned the witness, "Well, does it refresh your memory in relation to speed? You said around 45. Is that still your recollection?" The witness answered in the affirmative. After plaintiff questioned the witness on other matters, not related to "refreshed memory," the following took place:

"BY MR. KRAUSE: Q. With reference to the speed of the car, was the information that you put on this statement correct at the time?

"A. It was 45 to 50, not 50 to 55.

"Q. About 45 to 50, not 50 to 55?

"A. Yes.

"Q. Did you tell the man that talked to you that it was 50 to 55?

"MR. MCBAIN: Objection, Your Honor, incompetent, irrelevant, and immaterial, argumentative, leading and suggestive.

"THE COURT: Sustained."

The right of impeachment does not exist where the witness states he has no recollection of the fact concerning which he is examined. (*Estate of Johnson*, 152 Cal. 778 [93 P. 1015]; *Estate of De Laveaga*, 165 Cal. 607 [133 P. 307]; 54 Cal.Jur.2d, *Witnesses*, § 187, p. 626.)

At no time was the written statement marked for identification or offered into evidence. There was no representation to the court of the basis on which surprise was claimed nor was it made to appear what statements were made in the written statement which were inconsistent with the testimony of the witness. After the above quoted examination on the point there may have been an inconsistency. However, the representation that there was an inconsistency prior to the examination was never made to the court. Regardless, the alleged inconsistency came into the evidence.

Although the trial judge indicated to plaintiff that a foundation would have to be laid to claim surprise and a consequent impeaching process or to refresh the witness' memory, plaintiff failed to do either. Also, plaintiff made no offer of proof to conform to either procedure. The court did not rule upon either procedure nor was there an opportunity for him to do so.

Plaintiff, as others have done, failed to protect his record. Had he used the proper procedure either to claim surprise or to attempt to refresh the witness' memory, requested a ruling thereon which ruling was not made, plaintiff would have protected his record and may have had grounds to complain on appeal. Not having done so, plaintiff may not raise the issue for the first time on appeal.

Judgment affirmed.

Kerrigan, J., and Tamura, J., concurred.